IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENDRICK COOK-BEY, #174 046, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-307-WHA |
| | ) | [WO] |
| CAMILLE LUCKIE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Kendrick Cook-Bey, an inmate incarcerated at the Bullock Correctional Facility when he filed this *pro se* 42 U.S.C. § 1983 action, alleges prison officials at the Staton Correctional Facility ("Staton") are liable for constitutional claims arising from Defendants' processing and handling of his mail in June 2015. Cook-Bey sues Lieutenant Camille Luckie, Warden Leeposey Daniels, and Commissioner Jefferson Dunn. He seeks damages, costs, and injunctive relief. Doc. 1.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Cook-Bey's claims for relief. Docs. 29 & 30. In these filings, Defendants deny they acted in violation of Cook-Bey's constitutional rights. Docs. 29 & 30. Upon receipt of Defendants' special report, the court issued an order directing Cook-Bey to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Cook-Bey that "the court may at any time thereafter and without notice to the

parties . . . treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 31.

Cook-Bey responded to Defendants' special report. Doc. 34.  He has not sworn to the truthfulness of the statements in his response, however, and it does not meet the requirements of Federal Rule of Civil Procedure 56(e)(1) that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  This failure on Cook-Bey's part means that his response is not evidence that could create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(1); *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 30, 2007) (holding that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment"); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1986); *Dickinson v. Wainwright*, 626 F.2d 1184, 1185 (5th Cir. 1980).  The court will treat Defendants' report as a motion for summary judgment, and recommends this motion be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment

2

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party could not prove his case at trial).

When Defendants meet their evidentiary burden, as they have here, the burden shifts to Cook-Bey to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his claims exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a

verdict in its favor. *Greenberg*, 498 F.3d at 1263.  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e).  But a "mere 'scintilla' of evidence supporting the opposing party's position will not suffice." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein*, 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create

an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'").   However, general, blatantly contradicted, and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).   Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case.   Here, Cook-Bey fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A.    The Complaint

On June 4, 2015, Luckie summoned Cook-Bey to Hall One at Staton to pick up his mail.  The mail consisted of religious material and was addressed to the Moorish Science Temple "c/o Chaplain Stephen Smith."  When Cook-Bey arrived at Hall One, a trainee told him he had to be handcuffed.  Cook-Bey responded that he did not consent to being handcuffed behind his back to pick up mail.  Cook-Bey also mentioned that Administration Regulation 448 sets forth the procedure for mail.  The trainee left the area and returned with Luckie, who told Cook-Bey that if he wanted his mail he first would have to be handcuffed.  Cook-Bey reiterated to Luckie that he did not "consent" to that policy.  Luckie then directed another correctional officer to handcuff Cook-Bey, who said he had no choice and complained that he should not have to be in handcuffs since the mail was of a religious nature addressed to the Moorish Science Temple in the care of the chaplain.  Cook-Bey asked Luckie how he could sign for his mail with his hands cuffed behind his back, but Luckie only said that if he did not wish to be handcuffed then he would not get his mail. Doc. 1-1 at 1–2.

Cook-Bey notified Dunn and Daniels in writing on June 10, 2015 of the "federal mail violation" by Luckie.  On June 15, 2015, Cook-Bey told Chaplain Smith that Luckie withheld his mail addressed to the Moorish Science Temple in care of the Chaplain.  After Chaplain Smith spoke with Luckie by phone, he told Cook-Bey to speak with her.  After refreshing Luckie's memory regarding their June 4, 2015 encounter, Luckie told Cook-Bey that the mail had been destroyed because he did not want it. Doc. 1-1 at 2–3.

Cook-Bey maintains that Luckie's conduct violated his First Amendment rights to free speech and freedom of religion because her actions resulted in the restriction of his

mail for no reason, and that her destruction of his mail violated prison regulations. Cook-Bey further complains that Defendants failed to provide him with due process mandated by the prison regulation regarding inmate mail, and that Dunn and Daniels refused to remedy the matter with his mail after being notified of his complaints. Doc. 1 at 4–5.

### B.   Absolute Immunity

To the extent Cook-Bey requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 Fed. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)).

"Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has

Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr*

*v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing,

Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims

seeking monetary damages from they in their official capacities. *Selensky*, 619 F. App'x at

849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state

officials sued in their official capacities are protected under the Eleventh Amendment from

suit for damages); *Edwards v. Wallace Comm. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995)

(holding that damages are unavailable from state official sued in his official capacity);

*Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## C.     Injunctive Relief

Cook-Bey requests injunctive relief against Defendants, but he is no longer

incarcerated at Staton.  The transfer or release of a prisoner moots any claims for injunctive

or declaratory relief. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also*

*Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (holding that past exposure to even

illegal conduct does not in and of itself show a pending case or controversy regarding

injunctive relief if unaccompanied by any continuing present injury or real and immediate

threat of repeated injury).  Because it is clear from the pleadings and records before the

court that Cook-Bey is no longer incarcerated at Staton, his request for equitable relief is

moot.

## D.     Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted).   To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).   There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents occurred.   Cook-Bey must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Cook-Bey must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).   "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and

citations omitted).   "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted).   The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id*. at 1209.   "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted).   The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).   If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

## E.     Section 1983 Claims

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.   In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.    *Violation of Administrative Regulations*

Cook-Bey complains that Defendants failed to adhere to prison regulations regarding mail handling.  Specifically, he challenges Luckie's failure to comply with Administrative Regulation ("AR") 448 regarding the process by which inmates receive mail, the time frame within which inmates are allowed to receive or reject mail, and by intentionally destroying mail. Docs. 1 & 1-1.

A violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights.  The fact that state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimension. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding that prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007)

(finding plaintiff's claim alleging defendants violated an internal jail policy insufficient to survive summary judgment); *Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (finding "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations"); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, failing to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding the "failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation"); *see also Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1991) (finding state's failure to abide by its law is not a federal constitutional issue if state law grants more protections than constitutionally required); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527–28 (11th Cir. 1987) (finding violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

In light of the foregoing, Cook-Bey's claim that Defendants violated his constitutional rights by failing to adhere to prison administrative regulations for handling mail provides no basis for relief in this § 1983 action. Defendants are entitled to qualified immunity on this claim.

### 2. *First Amendment—Freedom of Speech*

Cook-Bey alleges that Luckie's handling of his mail violated his First Amendment right to free speech. Doc. 1 at 3. This mail was addressed to "Moorish Science Temple, c/o Chaplain Stephen Smith, G.S. Kendrick Cook-Bey." Doc. 30-1 at 6. Under AR 448, "[t]he Chaplain, or the Warden's designee, is responsible for reviewing all mail entering the institution for an inmate that is presumed to be religious material." *See* Doc. 30-2 at 1–2. Luckie testifies that Chaplain Smith retrieved the mail addressed to "the chapel," which contained newspaper journals and "bootleg" DVDs. Doc. 30-2 at 2. Because DVDs are contraband, Luckie completed a Notification of Rejected Mail—Form 448. Doc. 30-2 at 2. On Form 448, Luckie noted that the correspondence was being returned to sender because Cook-Bey "did not have prior approval: Chaplain Smith has no knowledge of material [and] DVD are bootlegged." Docs. 30-2 at 2 & 30-1 at 5. Form 448 provides notice that an inmate has 72 hours from the date on the form to appeal the notification of rejected mail to the Warden or his designee. Doc. 30-1 at 5. The form also provides notice that the inmate has the option to return the mail to the sender at his own expense within 30 days or the mail will be destroyed. Doc. 30-1 at 5. Luckie testifies that Cook-Bey refused to sign the notification of rejected mail form. Lucki also testifies that she was not at work on June 15, 2015 when Cook-Bey's returned to Hall One to speak with her about his mail. Doc. 30-2 at 2. Luckie further testifies that Cook-Bey did not appeal the rejection of his mail within 72 hours or send the rejected mail to an address of his choosing at his own expense within 30 days, so the mail was destroyed in accordance with administrative regulations regarding inmate mail. Doc. 30-2 at 2.

"Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al–Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc*., 507 U.S. 410, 427 (1993)); *see Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). An inmate "has a First Amendment free speech right" to send and receive legal mail, which is subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators. *Al–Amin*, 511 F.3d at 1333; *see also Turner v. Safely*, 482 U.S. 78 (1987). Courts are "sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the 'outside' who seek to enter that environment, in person or through the written word." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Courts afford "considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.* at 408. Thus, prison regulations that impinge on an inmate's First Amendment rights must be "reasonably related to legitimate penological interests," and in making that determination, courts consider and balance the four factors set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See Thornburgh*, 490 U.S. at 413 (holding that the *Turner* reasonableness test applies to publications sent to an inmate). The four factors under *Turner* are: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest"; (2) "whether alternative means are open to inmates to exercise the asserted right"; (3) "what impact an accommodation of the right would have on guards and inmates and prison resources"; and (4) "whether there are ready alternatives to the

regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quotation marks omitted). Isolated incidents of mail interference, however, generally cannot establish a constitutional violation. *Davis*, 320 F.3d at 351 (finding that the allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm because inmate must show a prison official "regularly and unjustifiably interfered" with his mail); *see also Florence v. Booker*, 23 F. App'x 970, 972 (10th Cir. 2001) (finding a "single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts").

Administrative Regulation 461 requires the Institutional Chaplain to review and approve inmate religious material coming through the mail in accordance with AR 448, which requires that all religious material be sent to the inmate in care of the Chaplain or institutional designee. *See* Doc. 30-5 at 6-8; *see also* Administrative Regulation 448, ¶ I(1). Cook-Bey's mail from "Moorish Civil Letter" delivered on June 4, 2015 was addressed in care of Chaplain Smith, but it is undisputed that Cook-Bey did not have the Chaplain's approval to receive this mail. And it is unrefuted that this mailing contained contraband material. Even if Cook-Bey could show that Luckie improperly destroyed his mail, this isolated incident, without more, is insufficient to establish a constitutional violation. *Davis*, 320 F.3d at 351; *see generally Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997) (finding isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable). Cook-Bey has not alleged that his mail was "regularly and unjustifiably" interfered with by Defendants or that their actions resulted from improper

motivation. *See Davis*, 320 F.3d at 351; *Al-Amin,* 511 F.3d at 1334. To the extent Cook-Bey's First Amendment claim is based on Defendants' failure to comply with prison regulations prior to destroying his mail, as explained, prison officials' failure to follow their own policies and procedures, without more, does not amount to a constitutional violation. *Myers*, 97 F.3d at 94.

Here, Cook-Bey produces no evidence to substantiate his allegation that Defendants' actions amounted to an unconstitutional interference with his incoming mail. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) (finding that "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment"). Accordingly, Defendants' are entitled to qualified immunity on this claim. *See Anderson*, 477 U.S. at 252.

### 3.   *First Amendment—Freedom of Religion*

Cook-Bey complains that Luckie's actions regarding his mail also violated his First Amendment right to the free exercise of his religion.[1] Doc. 1 at 3. A prison inmate is entitled to reasonable opportunity to practice his religion under the Free Exercise Clause of the First Amendment. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). To state a free exercise

---

[1] Although not material to the resolution of this issue, the court notes it is not clear from the record which religion Cook-Bey practices. Defendants' evidentiary material includes a religious preference form submitted by Cook-Bey on June 18, 2014 where he checked multiple religious preferences including Christian, Muslim, Native American Spirituality, the 5% Nation of Islam, Moorish Science Temple, and "ect, ect [sic]." Doc. 30-1 at 3. On October 16, 2015, Cook-Bey submitted a form seeking a religious exception to the grooming policy to grow a beard and indicated his religious preference as Moorish Science Temple. Doc. 30-1 at 4. Prison officials approved Cook-Bey's religious exception request and in doing so noted on the document that his religious preference was Muslim. Doc. 30-1 at 4; *see Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015) (holding that, in a suit filed under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5, a prison grooming policy limiting beard-growth to a half inch placed a substantial burden on a Muslim prisoner's exercise of his religion, as it required him "to 'engage in conduct that seriously violates [his] religious beliefs'").

claim, a plaintiff must first show that the official action burdened a religious belief rather than a philosophy or way of life. *Wisconsin v. Yoder*, 406 U.S. 205, 215–19 (1972).  An inmate retains his right to the free exercise of religion, subject to reasonable restrictions stemming from legitimate penological concerns. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Cook-Bey presents no argument to support a claim relating to a restraint or inhibition from freely practicing his religion.  While Cook-Bey alleges that his First Amendment right to practice his religion was violated by the destruction of his mail "of a religious nature" (Doc. 1-1 at 3), resulting in financial loss to him for "services paid for and not received or refunded" (Doc. 1 at 3), he asserts no facts which show that Defendants' conduct or actions interfered with his religious beliefs or his right to practice his religion. Under the Free Exercise Clause, Cook-Bey must show how Defendants' actions interfered with the exercise or expression of his religious beliefs. *See Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989) (holding that a plaintiff must show a "substantial burden" on a "central religious belief or practice" to prevail under the Free Exercise Clause).  He has failed to do so.  Cook-Bey also has failed to show that Defendants' reason for rejecting his mail did not stem from legitimate prison security concerns. *O'Lone*, 482 U.S. at 349.  Defendants are entitled to qualified immunity on this claim.

### 4.    *Due Process*

Cook-Bey complains that Luckie intentionally, unlawfully, and without authorization denied him delivery of his mail and destroyed the contents of the package in

violation of his right to due process.  These allegations, however, fail to implicate the due process protection afforded by the Constitution because "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 424 U.S. 327 (1986) (holding that an individual deprived of property by an "unauthorized act" of a state official has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no due process violation occurs "as long as *some* adequate post-deprivation remedy is available"); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (finding inmate's claim that deputy marshal failed to return ring to inmate, whether due to negligence or an intentional act, provided no basis for relief as neither a negligent loss of property nor an intentional deprivation of property violates due process); *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process).

"[T]he Alabama legislature has created a statute providing a tort remedy for the unlawful deprivation or interference with an owner's possession of personal property. Moreover, an aggrieved person may file a claim with the state Board of Adjustment to recover damages to property [or for a loss of property] caused by the state of Alabama or any of its agencies." *Browning v. City of Wedowee, Ala.*, 883 F. Supp. 618, 623 (M.D. Ala.

1995) (citing Ala. Code § 6-5-260).  Thus, the State of Alabama provides meaningful post-deprivation remedies for Cook-Bey to seek redress from Defendants' allegedly improper denial and destruction of his mail.  Defendants are entitled to qualified immunity on  this claim.

### 5.    *Conspiracy*

Cook-Bey alleges that Defendants conspired to intentionally and willfully destroy his incoming mail in violation of his constitutional rights. Doc. 1 at 3.  But he alleges no facts suggesting a conspiracy.  Rather, his conspiracy allegation is conclusory and fails to allege that Defendants reached an agreement or a tacit understanding to commit acts in violation of any constitutionally protected right. *See Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990); *see also Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (finding that merely "stringing together" adverse acts does not demonstrate the existence of a conspiracy).

### 6.    **Respondeat Superior—***Defendants Dunn and Thomas*

Cook-Bey alleges that he informed Dunn and Daniels about Luckie's actions but they failed to correct the situation or ignored it.  Dunn and Daniels deny they ever received notice or information regarding Cook-Bey's complaint related to Luckie's handling of his mail.  These defendants also deny any personal knowledge or involvement with the claims

made the basis of the complaint, and as Commissioner of the ADOC Dunn states that he does not control the daily operations of any ADOC facility.[2] Docs. 30-3 & 30-4.

Cook-Bey complains that Dunn and Daniels failed to investigate his complaints about Luckie's destruction of his mail.  Under settled law, inmates do not have a constitutional right to an investigation of any kind by government officials. *DeShaney v. Winnebago Soc. Servs.,* 489 U.S. 189, 196 (1989) (holding "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Wilkins v. Ill. Dept. of Corr.*, 2009 WL 1904414, *9 (S.D. Ill. 2009) ("Because inmates do not have a due process right to [an investigation] at all, an allegation that any investigation which is actually conducted by prison officials was 'inadequate' or 'improper' does not state a constitutional claim.").

Cook-Bey also has not produced any evidence to show that Dunn or Daniels were directly responsible for or participated in actions about which he complains.  In such a situation, the law in this circuit is clear.  "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted); *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff

---

[2] That Cook-Bey sent certified mail to the Alabama Department of Corrections for which he received a return receipt does not refute Defendants' testimony that they did not personally receive notice regarding his claims about his mail or that they had no knowledge of the facts underlying his claims.

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Marsh v. Butler Co., Ala.*, 268 F.3d 1014, 1035 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (finding a supervisory official "can have no *respondeat superior* liability for a section 1983 claim"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (finding supervisory officials are not liable based on *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)) (finding 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials at Staton could attach to Daniels or Dunn only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Here, Cook-Bey presents no evidence that would create a genuine dispute of material fact regarding the claims lodged against Dunn and Daniels. It is undisputed that these defendants did not participate in or have any involvement, direct or otherwise, with the claims made the basis of the amended complaint. For this reason, Dunn and Daniels can be held liable for actions of correctional officials at Staton only if their actions bear a causal relationship with the purported violations of Cook-Bey's constitutional rights. To

establish the requisite causal connection and avoid entry of summary judgment in favor of
Dunn and Daniels, Cook-Bey must present sufficient evidence which would be admissible
at trial of either "a history of widespread abuse [that] put[ ] [the defendants] on notice of
the need to correct the alleged deprivation, and [they] fail[ed] to do so," or a "custom or
policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that]
support an inference that [Dunn and Daniels] directed the [facility's staff] to act unlawfully,
or knew that [staff] would act unlawfully and failed to stop them from doing so." *Cottone*,
326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the
pleadings and evidentiary materials in this case demonstrates that Cook-Bey has not met
this burden.

The record before the court contains no evidence to support an inference that Dunn
or Daniels directed Luckie or any other correctional official to act unlawfully or knew that
she would act unlawfully and failed to intervene.  In addition, Cook-Bey presents no
evidence of obvious, flagrant, or rampant abuse of continuing duration in the face of which
Dunn and Daniels failed to take corrective action.  Finally, no evidence is presented that
the challenged action occurred pursuant to a policy enacted by Dunn or Daniels.  Thus, the
requisite causal connection does not exist between the actions of Luckie and Dunn or
Daniels, and liability under the custom or policy standard is not warranted.  Based on the
foregoing, Defendants Dunn and Daniels are entitled to qualified immunity on this claim.

### 7.   *Criminal Charges*

To the extent Cook-Bey complains that Defendants' actions in handling his mail
amounted to violations of various federal criminal statutes (*see* Doc. 1 at 2), a "private

citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W.D. Tex. 1997) ("Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States.  The statute does not create a private cause of action."); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997) (finding no private right of action exists under federal statute criminalizing conspiracies to deprive an individual of his constitutional rights); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (finding plaintiff has no constitutional right to have a defendant prosecuted); *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, *1 (6th Cir. 1999) (finding "the district court properly dismissed [Plaintiff's] complaint as frivolous . . . [because] contrary to [his] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted"); *see also Rockefeller v. U.S. Ct. of App. Office for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (finding that criminal statutes "do not convey a private right of action").  Because this claim is premised upon violations of legal interests that do not exist, it is without merit and due to be dismissed.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motions for summary judgment (Doc. 30) be GRANTED;

2.      Judgment be ENTERED in favor of Defendants and against Plaintiff;

3.      This case be DISMISSED with prejudice; and

4.      Costs be TAXED against Plaintiff for which execution may issue.

It is further ORDERED that **on or before June 25, 2019**, the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 11th day of June, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE